<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOSE GONZALEZ,**<br><br>                 Plaintiff,<br><br>       v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>                 Defendant. | **Civil Action No. 14-810 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Jose Gonzalez seeking review of an Administrative Law Judge's ("ALJ") decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

**I.     Background**

Jose Gonzalez is a 53-year-old male who alleges disability due to numerous impairments, including diabetes, high blood pressure and cholesterol, blurry vision, arthritis, thyroid problems, and depression. (D.E. No. 7, Administrative Record ("Tr.") at 12). Gonzalez filed applications for SSI and DIB on February 28, 2008. (*Id.* at 119-31). These applications were denied initially and on reconsideration. (*Id.* at 66-72). Gonzalez then requested a hearing, which was held in front of ALJ Donna Krappa on March 31, 2010. (*Id.* 34-65). On July 22, 2010, ALJ Krappa issued an

unfavorable ruling for Plaintiff, finding that he was not disabled.  (*Id.* at 20-28).  Gonzalez requested a review by the Appeals Council of the Social Security Administration, which was denied on April 29, 2011.  (*Id.* at 5-9).

Gonzalez then filed a complaint in federal district court, which issued a consent order remanding the case back to the Social Security Administration on December 19, 2011.  (*Id.* at 835-36).  The Appeals Council of the Social Security Administration subsequently remanded the matter to ALJ Donna Krappa for further administrative action on January 25, 2012.  (*Id.* at 837-41).  ALJ Krappa held supplemental hearings on August 16, 2012, (*id.* at 774-802), and November 29, 2012, (*Id.* at 758-73).  On January 24, 2013, ALJ Krappa issued an unfavorable ruling for Gonzalez, again finding him not disabled.  (*Id.* at 740-51).  Gonzalez requested a review of the decision by the Appeals Council, which was denied on September 23, 2013.  (*Id.* at 728-31).  Accordingly, ALJ Krappa's January 24, 2013 decision became the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner").  *See* 20 C.F.R. § 404.981

Gonzalez appealed the Commissioner's decision by filing the present Complaint with this Court.  (D.E. No. 1, Complaint ("Compl.")).  On December 17, 2014, Defendant filed an Answer, (D.E. No. 6), and the administrative record was filed, (D.E. No. 7).  Gonzalez's moving brief was due by March 3, 2015.  *See* L. Civ. R. 9.1(e) (providing plaintiff in social security appeal seventy-five days from date of defendant's answer to file moving brief).  However, Plaintiff failed to timely file a brief.  Accordingly, on September 28, 2015, the Court issued an Order granting Plaintiff until October 19, 2015, to file his moving brief, and Defendant until November 9, 2015 to file a brief in opposition.  (D.E. No. 10).

On October 18, 2015, Plaintiff filed his moving brief.  (D.E. No. 11, Plaintiff's Memorandum of Law ("Pl. Mov. Br.")).  Defendant filed a brief in opposition on December 2,

2105, (D.E. No. 12, Brief for Defendant Pursuant to Local Rule 9.1 ("Def. Opp. Br.")), and Plaintiff filed a reply brief on January 20, 2016.  (D.E. No. 13, Reply Brief of Plaintiff ("Pl. Rep. Br."). On December 2, 2015, Defendant filed a brief in opposition.  (D.E. No. 12, Defendant's Brief Pursuant to Local Civil Rule 9.1).  Plaintiff filed a brief in reply on January 20, 2016.  (D.E. No. 13, Plaintiff's Reply Brief).  The matter is now ripe for resolution.

**II.     Legal Standards**

   **A.     Standard of Review**

   The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision."  *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

   The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

3

**B.     Standard for Awarding Benefits**

To be eligible for DIB or SSI under Titles II and XVI of the Social Security Act, a claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). Additionally, claimants seeking DIB must satisfy the insured status requirements set forth in § 423(c), while those seeking SSI must fall within the income and resource limits set forth in §§ 1382a and 1382b.

An individual is deemed disabled under both titles if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a) (regarding DIB), 1382c(a)(3)(A) (regarding SSI). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4). If at any point in this sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the evaluation stops. *Id.* Proper procedure also requires that the Commissioner determine the individual's residual functioning capacity ("RFC") before proceeding to step four. 20 C.F.R. § 404.1520(e), 416.920(e). RFC is defined as the most the individual is capable of doing despite her limitations, including those that are not severe, and it is based on all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).

### III. ALJ Krappa's Decision

ALJ Krappa applied the five-step disability evaluation process required by 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), and determined that Plaintiff was not disabled under the Social Security Act. (Tr. at 740-51).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date of his disability application on February 11, 2008. (*Id.* at 742). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: depression, hypertension, diabetes, psoriasis, hypothyroidism, and obesity. (*Id.*). In addition, the ALJ found that, while Plaintiff testified at the hearing that he experienced pain in his left arm as well as an ulcer, those impairments were not severe because they "fail to meet the 12-month duration

5

requirement under the definition of 'disability' . . . moreover, they are not supported with clinical findings or laboratory testing." (*Id.* at 743).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that "meets" or "medically equals" the severity of the listings. (*Id.*). In arriving at this conclusion, the ALJ referenced listings 8.05 (dermatitis); 4.00 (cardiovascular impairments); 9.08 and 9.02 (endocrine system impairments); 4.00Q, 3.00I, and 4.00F (obesity); and 12.04 and 12.09 (mental impairments). (*Id.* at 743-44). The ALJ then considered the four functional categories of paragraph B of the "mental impairment" listings, finding that Plaintiff had mild restriction in "activities of daily living"; mild difficulties with "concentration, persistence and pace"; moderate difficulties in "social functioning"; and no "episodes of decompensation." (*Id.* at 744-45).

At step four, the ALJ determined that Plaintiff had the RFC to perform the exertional demands of "medium work," finding that he is able to "lift/carry 50 lbs. occasionally and 25 lbs. frequently; stand/walk for 6 hours in an eight hour workday; sit for 6 hours in an eight hour workday; and perform unlimited pushing and pulling within the weight restriction given." (*Id.* at 745). As to the mental demands of work, the ALJ found that Plaintiff is able to perform jobs

> that are unskilled and repetitive; that are low stress (that is, these jobs require only an occasional change in the work setting during the workday, only an occasional change in decision-making required during the workday, and, if production-based, production is monitored at the end of the day rather than consistently throughout it); and, that require only occasional contact with supervisors, co-workers, and the general public."

(*Id.* at 745-56).

The ALJ noted that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (*Id.* at 746).

6

The ALJ then concluded that, based on the above RFC, Plaintiff was capable of performing his past relevant work as a cleaner. (*Id.* at 751). In support, the ALJ consulted a vocational expert ("VE"), who testified that Plaintiff's prior work as a cleaner was classified as "unskilled" and performed at the light level of physical exertion. (*Id.*). Therefore, the ALJ concluded at step four that Plaintiff was not disabled as defined by the Social Security Act. (*Id.*).

## IV.   Discussion

Plaintiff argues that the ALJ's decision was not supported by substantial evidence at steps three and four for several reasons. Regarding step three, Plaintiff argues that the ALJ erred in determining that Plaintiff's psoriasis, hypertension, diabetes, thyroid disorder, and mental impairments did not meet the requirements of the relevant listings. (Pl. Mov. Br. at 19-22). Regarding step four, Plaintiff argues generally that the ALJ failed to support her RFC conclusions with substantial evidence. (*Id.* at 26-27). Plaintiff also argues that the ALJ failed to properly consider medical evidence that supported Plaintiff's subjective complaints of pain. (*Id.* at 18-19). And finally, Plaintiff argues that the ALJ erred in relying on the VE's opinion at step four because the hypothetical that the ALJ posed to the vocational expert failed to accurately portray Plaintiff's RFC. (*Id.* at 27-30). The Court will address each argument in turn.

### A. Step Three

Plaintiff argues that that ALJ erred at step three for three reasons. First, Plaintiff argues that ALJ Krappa's analysis of listing 8.05 (dermatitis) was erroneous because the ALJ applied the wrong criteria and failed to consider all relevant evidence in concluding that the listing was not met. (*Id.* at 19-20). Second, Plaintiff argues that the ALJ erred in concluding that his hypertension, diabetes, and thyroid disorder were not disabling. (*Id.* at 21). And third, Plaintiff argues that the

7

ALJ failed to consider relevant medical evidence in concluding that his mental impairments did not meet the requirements of a listing at step three. (*Id.* at 21-24).

### 1. Plaintiff's Psoriasis

Plaintiff argues that the ALJ's consideration of his psoriasis was not supported by substantial evidence for two main reasons. First, Plaintiff argues that the ALJ improperly disregarded medical evidence in concluding that "there is no evidence to suggest that [Plaintiff] has used his medication as prescribed (no supporting pharmacy records) or notations in the medical records." (*Id.* at 18-20). And second, Plaintiff takes issue with the ALJ's statement that "the record is devoid of substantiation of a skin disorder lasting fifteen years," despite the fact that the listing requires evidence of a skin disorder lasting only three months to support a finding of disability. (*Id.*).

At step three, "the ALJ must compare the claimant's medical evidence to a list of impairments presumed severe enough to preclude any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004). Specifically, listing 8.05 is met by a showing of "dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Part 404, Subpart P, Appendix 1. The listing further defines "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." *Id.* Examples of extensive skin lesions include:

> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

      c.   Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

*Id.* Thus, even where a claimant suffers from chronic psoriasis, the impairment does not meet the requirements of listing 8.05 where the record contains insufficient evidence of such severe functional limitations. *See Ocampo v. Astrue*, No. 10-0502, 2011 WL 4344054, at *3 (W.D. Tex. Sept. 13, 2011).

Further, Social Security regulations provide that "in order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. § 416.930. Therefore, where an impairment may be reasonably controlled with such medication, the impairment will not be found disabling within the meaning of the Social Security Act. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007).

And finally, the claimant has the burden of presenting sufficient evidence that her medical problems were of listing severity. *Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005). Similarly, where a plaintiff alleges error by the ALJ, "the burden of showing harmfulness is normally on the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 398 (2009). This burden requires that Plaintiff also show that, but for the error, he might have proven his disability. *See Holloman v. Comm'r of Soc. Sec.*, No. 14-589, 2015 WL 1346167, at *2 (D.N.J. Mar. 25, 2015).

Here, Plaintiff has failed to present any evidence indicating that his psoriasis resulted in any "very serious" functional limitations comparable in severity to the examples provided in listing 8.05.[1] Because of this, Plaintiff has not met his burden of showing that his psoriasis met the criteria of the listings. *See Williams*, 156 F. App'x at 505; *See Ocampo*, 2011 WL 4344054, at *3.

---

[1] Indeed, a medical expert testified at the March 31, 2010 oral hearing that he did not believe that Plaintiff's psoriasis resulted in any "very serious" functional limitations. (Tr. at 59). To that effect, he noted that

Additionally, while Plaintiff points to medical reports indicating that he has been prescribed medication for his skin condition, those same reports link the worsening of Plaintiff's skin condition with his failure to adhere to his prescribed medication regimen. For example, Plaintiff points to a July 2007 report in which Dr. Kihiczak proscribed topicort to treat his psoriasis, (Tr. at 407), and a September 2007 report in which Dr. Schwartz indicated that Plaintiff suffered worsening of his condition, (Tr. at 424). However, Dr. Schwartz also indicated in the September 2007 report that Plaintiff "is worse now because he ran out of topicort 3 weeks ago." (Tr. at 424). The conclusion that Plaintiff's condition worsened because of his failure to take his prescribed medication is supported by numerous medical reports in the record. (*See* Tr. at 387, 488, 451, 674). Thus, the record sufficiently supports the ALJ's conclusion that Plaintiff's psoriasis was not disabling in part because he failed to treat the skin condition as prescribed. *See Salles*, 229 F. App'x at 148 (finding an impairment non-disabling where plaintiff was prescribed treatment but did not follow treatment regimen regularly).

Plaintiff also argues that the ALJ applied the wrong time period requirements in concluding that the Plaintiff had not suffered from the skin condition for a sufficient amount of time. (Pl. Mov. Br. at 18-20). However, in light of Plaintiff's failure to meet his burden of showing the functional limitations of his psoriasis, any error by the ALJ in considering the time period of Plaintiff's psoriasis symptoms is harmless. *See Holloman*, 2015 WL 1346167, at *2 (affirming administrative decision where ALJ's errors could not have affected his ultimate outcome). For these reasons, the Court affirms the ALJ's conclusion that Plaintiff's psoriasis does not meet the requirements of listing 8.05.

---

"although this [skin condition] is bothersome and itchy, it is, in my opinion, not a serious condition." (*Id.*). He concluded that at best, Plaintiff's impairments resulted in "mild limitation" of his ability to work, and thus did not meet the requirements of any listing. (*Id.*).

### 2. Plaintiff's Hypertension, Diabetes, and Thyroid Disorder

Plaintiff argues that the ALJ erred in determining that Plaintiff's hypertension, diabetes, and thyroid disorder did not meet the requirements of the listings. (Pl. Mov. Br. at 21). However, the ALJ sufficiently supported each conclusion by finding that the record failed to support the presence of sufficient functional limitations as required by the listings for each impairment. (Tr. at 743). Plaintiff fails to point to any such functional limitations, and the Court's review of the administrative record can similarly find none. Additionally, Dr. Fetchner, a medical expert, testified at the March 31, 2010 oral hearing that Plaintiff's hypertension, diabetes, and thyroid disorder were well controlled on medications, and further that Plaintiff did not suffer any symptoms from his thyroid disorder. (Tr. at 827-30). Accordingly, the Court affirms the ALJ's determination that Plaintiff's hypertension, diabetes, and thyroid disorder do not meet the requirements of any listing. *See Drewery v. Astrue*, No. 0-110, 2010 WL 2710538, at *4 (W.D. Pa. July 8, 2010) (affirming ALJ's conclusion that plaintiff's diabetes and hypertension did not meet the criteria of the listings where evidence showed that the impairments were under control, and plaintiff failed to show any limitations associated with those impairments); *see also Langford v. Colvin*, No. 11-3095, 2014 WL 905630, at *4 (E.D. Wash. Mar. 7, 2014) (same).

### 3. Plaintiff's Mental Impairments

Plaintiff also argues that the ALJ's consideration of Plaintiff's mental impairments was not supported by substantial evidence for two reasons. (Pl. Mov. Br. at 21-23). First, Plaintiff argues that the ALJ improperly considered Plaintiff's testimony regarding the impact of his impairments on his social functioning. (*Id.* at 21). And second, Plaintiff argues that medical reports presented by two examining psychiatrists support a finding of disability, but were not properly considered by the ALJ. (*Id.* at 21-22).

### a. Plaintiff's "Moderate" Difficulties in Social Functioning

In concluding that Plaintiff had "moderate" difficulties in social functioning, (Tr. at 745), the ALJ noted that Plaintiff did have some difficulties in social functioning—indeed, Plaintiff testified at the hearing that he did not see his children much, did not have a girlfriend, and did not have many friends, (*id.* at 791). However, Plaintiff continued to visit his parents (albeit only once every few months), and would take walks in public. (*Id.*). The ALJ also cited the conclusions of William Ford, the claimant's treating clinical social worker, whose treatment records "show that the claimant was guarded, withdrawn, and prone to paranoid thoughts"; in the ALJ's judgment, these findings "justif[y] a functional finding of 'moderate' difficulties in maintaining social functioning." (*Id.* at 750). Further, the ALJ's finding of "moderate" difficulty in social functioning is supported by the Psychiatric Review Technique form submitted by Dr. Wayne Tillman, in which he found Plaintiff to suffer from only "mild" difficulties in social functioning. (*Id.* at 318).

Based on this analysis, the Court concludes that the ALJ's finding of "moderate" difficulties in social functioning is supported by substantial evidence. *Vasquez v. Comm'r of Soc. Sec.*, No. 13-5759, 2015 WL 5164786, at *8 (D.N.J. Sept. 2, 2015) (affirming ALJ's finding of moderate difficulties in social functioning where plaintiff, among other things, "went outside daily, drove and received rides to places, traveled independently, exercised weekly, and went grocery shopping."); *see also Steckroth v. Astrue*, No. 11-10473, 2012 WL 1079560, at *11 (E.D. Mich. Mar. 2) (affirming ALJ's finding of moderate limitation in social functioning where Plaintiff was capable of leaving his home on regular basis despite presence of paranoid thoughts and trouble getting along with supervisors).

### b. Dr. Fulford's and Dr. Tillman's Medical Reports

Next, Plaintiff argues that the ALJ failed to properly consider the reports of consultative examiner Dr. Paul Fulford or state agency consultant Dr. Wayne Tillman in coming to the conclusion that Plaintiff's mental impairments did not meet the requirements of the listings. (Pl. Mov. Br. at 21-23).

The ALJ is required to consider all evidence available in an individual's case record in making a disability determination, but he need not accept all such evidence at face value. *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999). Rather, the ALJ may weigh the probative value of medical opinions and reports, so long as he provides "some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). In crediting or rejecting such evidence at step three, an ALJ need not discuss in her opinion "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching her conclusions, *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

A review of the administrative opinion indicates that both reports were adequately considered. In her discussion of the report, the ALJ notes Dr. Fulford's finding that Plaintiff "had significantly impaired memory, and, deficits with attention and concentration (severely impaired); the claimant reported to the doctor that he experienced auditory command hallucinations and impaired sleep." (Tr. at 749). The ALJ also notes that Dr. Fulford gave Plaintiff a GAF score of 65, which is consistent with "mild" psychological symptoms. (*Id.*).

Further, while the ALJ notes that Dr. Fulford's observations of severe mental limitations are inconsistent with Plaintiff's testimony regarding his activities of daily living, the ALJ

adequately explains the weight she provided to each piece of evidence. For example, the ALJ states that these inconsistencies

> may be reconciled by the fact that the consultative examination by Dr. Fulford merely represents a single, isolated "snapshot" of the claimant's mental functioning, whereas a consideration of the claimant's own reported activities of daily living (e.g. he takes care of his own personal hygiene needs, goes for walks, watches television, listens to the radio . . .) more accurately reflects his longitudinal functional status.

(*Id.*). This discussion is sufficient to meet the ALJ's requirement to provide an explanation for discounting the otherwise competent medical evidence of Dr. Fulford's report. *See Sanner v. Colvin*, No. 14-8J, 2014 WL 4662112, at *2 (W.D. Pa. Sept. 18, 2014) (affirming ALJ's decision to give little weight to psychiatrist's report derived from one-time exam, because psychiatrist did not have "prolonged and continuous longitudinal basis for making statements about plaintiff").

Additionally, while the ALJ does not explicitly reference every relevant aspect of Dr. Tillman's "Psychiatric Review Technique" and "Mental RFC" forms in the administrative opinion, the ALJ's conclusions are nevertheless consistent with those reports. As Plaintiff notes, Dr. Tillman found Plaintiff to suffer from a moderate limitation in maintaining concentration, persistence, and pace, (Tr. at 318), as well as moderate limitations in the ability to understand, remember, and carry out detailed instructions and the ability to maintain a schedule and regular attendance, (*id.* at 322). However, these findings are consistent with the ALJ's conclusion that Plaintiff's mental impairments do not meet the requirements of a listing, and Plaintiff has failed to present sufficient evidence to the contrary. *See Crawford v. Astrue*, No. 08-1160, 2009 WL 1033611, at *11 (E.D. Pa. Apr. 15, 2009) (affirming ALJ's conclusion that plaintiff's mental impairments did not meet requirements of listing where record showed "nothing more than moderate mental limitations from mental status examinations."). Accordingly, the Court affirms the ALJ's consideration of Dr. Fulford's and Tillman's reports. *See id.*

### B. Step Four

Plaintiff argues that the ALJ erred at step four by failing to support her RFC conclusion with substantial evidence for three reasons. (Pl. Mov. Br. at 26-27). First, Plaintiff argues that the ALJ failed to properly consider all the relevant evidence in concluding that Plaintiff's subjective complaints of pain were not credible. (*Id.* at 18-19). Second, Plaintiff argues that the ALJ erred in relying on the vocational expert's opinion at step four because the hypothetical that the ALJ posed to the vocational expert failed to accurately portray Plaintiff's RFC. (*Id.* at 27-30). And third, Plaintiff argues that the ALJ erred by failing to explicitly find that Plaintiff's past work as a janitor constituted "substantial gainful activity." (*Id.* at 28).

#### 1. The ALJ's Credibility Determination

Plaintiff argues that the ALJ improperly relied on Plaintiff's testimony regarding his ability to perform certain routine daily activities in determining that his complaints of more serious disability were not credible. (*Id.* at 23-24). The Third Circuit has held that "while a claimant's subjective complaints must be given serious consideration, they must also be supported by medical evidence." *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 157 (3d Cir. 2013). Thus, the ALJ "is not obliged to accept without question the credibility of such subjective evidence." *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). Rather, an ALJ "may reject a claimant's subjective complaints when the ALJ specif[ies] his reasons for rejecting the[] claims and support[s] his conclusion with medical evidence in the record." *Martin*, 547 F. App'x at 158 (internal quotation marks omitted). Factors that an ALJ will consider in determining credibility include objective medical evidence as well as a claimant's own statements regarding his "daily activities, efforts to work, and any other evidence

showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529.

Here, the ALJ did not err by basing her credibility determination in part on Plaintiff's testimony regarding the extent of his daily activities. *See id.* Indeed, Plaintiff's testimony that he "takes care of his own personal hygiene needs, goes for walks, watches television, listens to the radio, feeds his cat, prepares his own meals 2-3 times weekly, does house and yard work," and "shops in stores for clothing" supports the ALJ's conclusion that Plaintiff was not disabled. *See Schaffer v. Comm'r of Soc. Sec.*, No. 13-1440, 2014 WL 2094315, at *5 (W.D. Pa. May 20, 2014) (affirming ALJ's conclusion that plaintiff was not disabled where plaintiff testified that his daily activities included getting dressed, doing household chores, traveling into town, and feeding his dog). Accordingly, the Court affirms the ALJ's consideration of Plaintiff's daily activities in determining that Plaintiff's subjective complaints of pain lacked credibility. *See id.*

### 2. The Hypothetical Posed to the VE

Plaintiff argues that the ALJ failed to include all of Plaintiff's credibly established impairments in the hypothetical posed to the VE at step four. (Pl. Mov. Br. at 27-29). Additionally, Plaintiff argues that the ALJ failed to consider the VE's responses to several hypotheticals in which the VE concluded that Plaintiff would not be able to perform past relevant work. (*Id.*)

The Third Circuit has held that a hypothetical posed to a vocational expert must include "all of the claimant's credibly established limitations, but does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's RFC." *Covone v. Comm'r Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005). Regarding the underlying RFC determination, "the ALJ need only include in the RFC those limitations which he finds to be credible." *Salles*, 229 F. App'x at 147.

Here, it appears that the hypothetical posed by the ALJ to the VE accurately reflected the ALJ's RFC determination as set out in the administrative opinion. (Tr. at 763-65; *cf. id.* at 745-46). Additionally, while the ALJ posed several additional hypotheticals to the VE, and the VE concluded that individuals in those hypothetical situations would be unable to work, the Court notes that those additional hypotheticals contained functional limitations which were not part of the ALJ's actual RFC determination. (*See id.* at 764-65). Therefore, the ALJ did not err by failing to take into account the VE's responses to those hypotheticals. *See Covone*, 142 F. App'x at 587. And because, as noted above, the Court finds the RFC determination itself to be supported by substantial evidence, the Court can find no grounds on which to overturn the ALJ's hypothetical. *See Salles*, 229 F. App'x at 147.

### 3. Whether Plaintiff's Past Work as a Janitor Constitutes "Substantial Gainful Activity"

Finally, Plaintiff argues that the ALJ erred by failing to explicitly find that Plaintiff's past work as a janitor constituted "substantial gainful activity" before determining that Plaintiff's ability to return to work as a janitor rendered him non-disabled. (Pl. Mov. Br. at 28). In order to be found not disabled at step four, a plaintiff must be capable of performing substantial gainful activity, 20 C.F.R. § 404.1520(a)(4), which is defined generally as a job whose responsibilities entail "use of your experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business," 20 C.F.R. § 416.973. However, "the ALJ does not bear the burden of establishing that [the plaintiff's] past relevant work is 'substantial gainful activity,'" or that the work was performed under special conditions taking into account the plaintiff's impairments. *See Jackson v. Comm'r of Soc. Sec.*, 36 F. App'x 498, 499 (3d Cir. 2002).

Here, Plaintiff notes his past relevant work as a janitor at an occupational center, and points to a report by Dr. Fulford questioning whether such occupation "was really competitive

17

employment." (Pl. Mov. Br. at 28 (*citing* Tr. at 296-99)).  Nevertheless, Plaintiff fails to meet his burden of presenting evidence to support the contention that his past work was not substantial gainful activity.  Accordingly, the Court affirms the ALJ's determination that Plaintiff's ability to return to the work of a janitor renders him non-disabled under the Social Security regulations.  *See Jackson*, 36 F. App'x at 499.

**V.     Conclusion**

For the foregoing reasons, the Court AFFIRMS ALJ Krappa's decision.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**